IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: ASBESTOS LITIGATION )
)
GLENDA GUSTAVSON, Individually )
and as Successor in Interest to the Estate of )
CARL D. GUSTAVSON, deceased, )
)
            Plaintiff, )
) Civil Action No. 17-1472-MN-SRF
            v. )
)
AIR & LIQUID SYSTEMS )
CORPORATION et al., )
)
            Defendants. )

**REPORT AND RECOMMENDATION**

**I.  INTRODUCTION**

Presently before the court in this asbestos-related wrongful death action are the motions for summary judgment of Air & Liquid Systems Corporation ("Air & Liquid")[1] (D.I. 130), Aurora Pump Company ("Aurora") (D.I. 124), Blackmer Pump Company ("Blackmer") (D.I. 116), BW/IP Inc. ("BW/IP")[2] (D.I. 126), CBS Corporation ("CBS")[3] (D.I. 119), Eaton Corporation ("Eaton")[4] (D.I. 122), Flowserve U.S., Inc. ("Flowserve")[5] (D.I. 113), FMC Corporation ("FMC")[6] (D.I. 114), Gardner Denver, Inc. ("Gardner Denver") (D.I. 120), Warren

---

[1] Air & Liquid is a successor-by-merger to Buffalo Pumps, Inc. (D.I. 131 at 1)
[2] BW/IP is a successor to Byron Jackson Pumps. (D.I. 127; D.I. 1, Ex. A at 1)
[3] CBS Corp. is a successor to Westinghouse Electric Corporation ("Westinghouse"). (D.I. 121 at 1)
[4] Eaton is a successor-in-interest to Cutler-Hammer, Inc. (D.I. 1, Ex. A at 1)
[5] Flowserve US Inc. is the successor to Edward Vogt Valve Company, Vogt Valve Co., Nordstrom Valves, Inc., Edward Valves, Inc., and Rockwell Manufacturing Company. (D.I. 115 at 1 n.1)
[6] FMC was sued on behalf of its former Northern Pump and Chicago Pump businesses. (D.I. 117 at 1)

Pumps, LLC ("Warren") (D.I. 132), and Anchor/Darling Valve Company ("Anchor Darling") (D.I. 128) (collectively, "defendants"). Plaintiff, Glenda Gustavson ("Mrs. Gustavson" or "plaintiff"), did not respond to these motions. As indicated in the chart *infra* and for the reasons that follow, the court recommends GRANTING Eaton's motion for summary judgment (D.I. 122) without prejudice and recommends GRANTING the remaining defendants' motions for summary judgment with prejudice.[7]

| Defendant | Motion for Summary Judgment |
| --- | --- |
| Air & Liquid Systems Corporation | GRANT |
| Aurora Pump Company | GRANT |
| Blackmer Pump Company | GRANT |
| BW/IP Inc. | GRANT |
| CBS Corporation | GRANT |
| Eaton Corporation | GRANT WITHOUT PREJUDICE |
| Flowserve U.S., Inc. | GRANT |
| FMC Corporation | GRANT |
| Gardner Denver, Inc. | GRANT |
| Warren Pumps, LLC | GRANT |
| Anchor/Darling Valve Company | GRANT |

---

[7] Defendants' opening briefs in support of their respective motions for summary judgment are as follows: Air & Liquid (D.I. 131), Aurora (D.I. 125), Blackmer (D.I. 118), BW/IP (D.I. 127), CBS (D.I. 121), Flowserve (D.I. 115), FMC (D.I. 117), Gardner Denver (D.I. 123), Warren (D.I. 133), and Anchor Darling (D.I. 129). Although Eaton filed its motion for summary judgment, it did not file an opening brief in support of its motion. (D.I. 122) It filed a subsequent motion to dismiss based on lack of any opposition by the plaintiff. (D.I. 140) In its letter request, Eaton references that a "supporting memorandum" was filed with its earlier motion. (*Id.*) However, no such memorandum is docketed. Without a properly supported opening brief, the court cannot assess the merits of Eaton's motion for summary judgment. Nonetheless, dismissal without prejudice is warranted based on plaintiff's failure to timely oppose Eaton's motion pursuant to the scheduling order, Fed. R. Civ. P. 41(b), Fed. R. Civ. P. 56(c)(1), and Fed. R. Civ. P. 56(e)(2). *See also Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003) (citing Fed. R. Civ. P. 56; *Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)).

## II. BACKGROUND

### a. Procedural History

On August 16, 2017, plaintiff originally filed this personal injury action against multiple defendants in the Superior Court of Delaware, asserting claims arising from Carl D. Gustavson's ("Mr. Gustavson" or "decedent") alleged harmful exposure to asbestos. (D.I. 1, Ex. 1) On October 18, 2017, the case was removed to this court by defendant Crane Co. pursuant to 28 U.S.C. §§ 1442(a)(1), the federal officer removal statute,[8] and 1446. (D.I. 1) Air & Liquid, Aurora, Blackmer, BW/IP, CBS, Eaton, Flowserve, FMC, Gardner Denver, Warren, and Anchor Darling filed motions for summary judgment, individually. (D.I. 130; D.I. 124; D.I. 116; D.I. 126; D.I. 119; D.I. 122; D.I. 113; D.I. 114; D.I. 120; D.I. 132; D.I. 128) Plaintiff did not respond to these motions.[9]

### b. Facts

#### i. Mr. Gustavson's alleged exposure history

Plaintiff alleges that Mr. Gustavson developed lung cancer as a result of exposure to asbestos-containing materials during his service as a boiler technician in the United States Navy.[10] (D.I. 1, Ex. 1 at ¶¶ 3-4, 13) Mr. Gustavson passed away on September 12, 2016. (*Id.* at

---

[8] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

[9] Aurora (D.I. 139), Blackmer (D.I. 137), BW/IP (D.I. 143), CBS (D.I. 141), Eaton (D.I. 140), Flowserve (D.I. 142), FMC (D.I. 138), Gardner Denver (D.I. 144), Warren (D.I. 136), and Anchor Darling (D.I. 145) requested that their motions be granted based on no opposition.

[10] Mr. Gustavson smoked a pack of cigarettes per week for forty years. (D.I. 115, Ex. B; D.I. 117, Ex. B) Defendants suggest that plaintiff is unable to prove causation in light of Mr. Gustavson's past smoking habits. (D.I. 131 at 10; D.I. 115 at 2; D.I. 117 at 3) Here, neither plaintiff nor defendants have produced expert testimony regarding Mr. Gustavson's history of smoking and its alleged causal connection to his death. Thus, it is recommended that the court not consider the decedent's smoking history. *See Brown v. General Elec. Co.*, 2012 WL

¶ 13) Plaintiff contends that Mr. Gustavson was injured due to exposure to asbestos-containing products that defendants manufactured, sold, distributed, or installed. (*Id.* at ¶ 9) Accordingly, plaintiff asserts claims individually, and as the personal representative of decedent's estate, for negligence, willful and wanton conduct, strict liability, and wrongful death. (*Id.* at ¶¶ 15-35)

Mr. Gustavson died prior to the commencement of this action, and was not deposed. (*Id.* at ¶ 13) Mr. John Kenneth Poggenburg ("Mr. Poggenburg") is the sole product identification witness in this case and his depositions occurred on February 22, 2018 and June 26, 2018. (D.I. 45; D.I. 74)

Mr. Gustavson enlisted in the Navy on June 29, 1954, and served aboard the *USS Shangri-La* and the *USS Edmonds*. (D.I. 121 at 2; Ex. B) He was honorably discharged from active duty on the *USS Shangri-La* on July 16, 1958. (D.I. 121 at 2; Ex. B) He was recalled to active duty on October 1, 1961 to serve on the *USS Edmonds* and was discharged from active duty again on August 1, 1962. (D.I. 121 at 2; Ex. B)

Mr. Poggenburg served on the *USS Edmonds* with Mr. Gustavson from October 1961 to July 1962. (D.I. 131, Ex. A at 15:9-16) Mr. Poggenburg served as the chief engineer aboard the *USS Edmonds* and admitted that in this role, he did not observe Mr. Gustavson's daily operations and duties. (*Id.* at 27:9-13, 34:4-11) Mr. Poggenburg did not serve on any other ships with Mr. Gustavson, and testified that he does not know what Mr. Gustavson's duties were while serving aboard the *USS Shangri-La*. (*Id.* at 15:13-23, 30:10-18, 41:22-25, 43:1-3, 72:11-21, 86:20-25)

---

7761251 (E.D. Pa. Nov. 9, 2012) (granting defendant's motion for summary judgment without discussion of plaintiff's past smoking habits in its analysis, even with an expert opinion produced by defendant); *In re Asbestos Litig.*, 2014 WL 605844 (Del. Super. Ct. Feb. 14, 2014) (concluding plaintiffs failed to meet product nexus standard under maritime or Arkansas law without analyzing plaintiff's past smoking habits, despite expert testimony produced by defendant).

4

Mr. Poggenburg testified that Mr. Gustavson started as a boiler tech on the *USS Edmonds* but left as the "oil king." (*Id.* at 21:14-17, 42:3-5) As the only "oil king" aboard the *USS Edmonds*, it was Mr. Gustavson's primary responsibility to measure the depth of fuel in all fuel tanks and move oil from tank to tank in order to maintain the proper stability of the ship. (*Id.* at 21:14-24, 45:3-18) Mr. Poggenburg testified that, in addition to his duties as "oil king," Mr. Gustavson would have been assigned to traditional boiler tech duties, such as standing watch at the boilers, performing routine maintenance of the steam lines and valves, and insulating steam lines. (*Id.* at 23:15-20, 24:7-12, 43:12-16) Mr. Poggenburg further testified that he did not know whether Mr. Gustavson was previously trained in maintaining ship equilibrium via oil tanks, or trained specifically on the *USS Edmonds*. (*Id.* at 63:22-64:18) Mr. Poggenburg did not have any personal knowledge that Mr. Gustavson worked on any equipment in the engine room. (*Id.* at 39:16-40:4)

Mr. Poggenburg could not recall the manufacturer of steam line insulation, asbestos wrap, pumps, pump packing, gaskets, evaporators, or fire bricks surrounding the boilers. (*Id.* at 24:20-25:16, 25:24-26:2, 26:13-27:16, 28:4-10, 29:9-17, 37:18-21) He identified Wilcox as a boiler manufacturer, Worthington as a pump manufacturer, and DeLaval as a steam valve manufacturer, but noted that he generally remembered these names and could not specifically place any equipment from these manufacturers on the *USS Edmonds*. (*Id.* at 25:17-23, 29:22-30:22, 34:20-35:7, 38:8-11) Mr. Poggenburg stated that he did not know the maintenance history or manufacturer name of any equipment aboard the *USS Edmonds* apart from his general recollection of Wilcox, Wurthington, and DeLaval. (*Id.* at 26:3-12, 29:18-30:9) Furthermore, he testified that he could not identify any manufacturer of equipment undergoing any maintenance

in an area where that he saw Mr. Gustavson was present while aboard the *USS Edmonds*. (*Id.* at 40:5-11)

### ii. Plaintiff's product identification evidence

Mr. Poggenburg is the sole product identification witness in this case and his depositions occurred on February 22, 2018 and June 26, 2018. (D.I. 45; D.I. 74)

#### 1. Air & Liquid Systems Corporation

Mr. Poggenburg indicated that he would have no reason to dispute plaintiff's counsel's representation that Buffalo pumps were aboard the *USS Shangri-La*. (D.I. 131, Ex. A at 62:6-10) However, Mr. Poggenburg was not assigned to the *USS Shangri-La* at any time when Mr. Gustavson served on board the ship. (*Id.* at 15:9-16, 72:11-21) He did not otherwise identify any asbestos-containing Buffalo pumps on the *USS Edmonds* or observe whether the decedent was exposed to any Buffalo pumps. (D.I. 131 at 4-5)

#### 2. Aurora Pump Company

Mr. Poggenburg did not identify any asbestos-containing Aurora products on board the *USS Edmonds* or observe whether the decedent was exposed to any Aurora product. (D.I. 125 at 5)

#### 3. Blackmer Pump Company

Mr. Poggenburg did not identify any asbestos-containing Blackmer products on board the *USS Edmonds* or observe whether the decedent was exposed to any Blackmer product. (D.I. 118 at 4)

### 4. BW/IP Inc.

Mr. Poggenburg did not identify any asbestos-containing BW/IP products on board the *USS Edmonds* or observe whether the decedent was exposed to any BW/IP product. (D.I. 127 at 2, 5)

### 5. CBS Corporation

Mr. Poggenburg did not identify any asbestos-containing Westinghouse products on board the *USS Edmonds* or observe whether the decedent was exposed to any Westinghouse product. (D.I. 121 at 4)

### 6. Eaton Corporation

Eaton contends that plaintiff did not identify any asbestos-containing Eaton products or observe whether the decedent was exposed to any Eaton product.[11] (D.I. 122)

### 7. Flowserve U.S., Inc.

Mr. Poggenburg did not identify any asbestos-containing Flowserve products on board the *USS Edmonds* or observe whether the decedent was exposed to any Flowserve product. (D.I. 115 at 3, 7)

### 8. FMC Corporation

Mr. Poggenburg testified that he would have no reason to dispute plaintiff's counsel's representation that there were Northern pumps onboard the *USS Edmonds*. (D.I. 117, Ex. C at 53:12-17) He also agreed that, because Mr. Gustavson was solely responsible for oil transfer, it would be fair to say that he worked on Northern pumps. (*Id.* at 53:20-24) Furthermore, Mr. Poggenburg agreed that Mr. Gustavson may have been exposed to asbestos from removing

---

[11] Eaton has not attached to its motion any written discovery responses or Mr. Poggenburg's product identification testimony. (*See* D.I. 122) No opening brief was filed with Eaton's motion.

7

packing or gaskets from the pumps. (*Id.* at 54:3-20) Mr. Poggenburg did not otherwise identify any Northern or Chicago pumps from his personal knowledge or observe whether the decedent was exposed to any Northern or Chicago pumps. (D.I. 117 at 4-5)

### 9. Gardner Denver, Inc.

Mr. Poggenburg did not identify any asbestos-containing Gardner Denver products on board the *USS Edmonds* or observe whether the decedent was exposed to any Gardner Denver product. (D.I. 123 at 2, 6)

### 10. Warren Pumps, LLC

Mr. Poggenburg testified that he would have no reason to dispute plaintiff's counsel's representation that there were Warren pumps onboard the *USS Shangri-La*. (D.I. 131, Ex. A at 63:2-5) He also agreed that because Mr. Gustavson worked in the fire room on the *USS Shangri-La*, he would have worked on Warren steam pumps. (*Id.* at 63:8-19) Mr. Poggenburg did not otherwise identify any Warren products on board the *USS Edmonds* or observe whether the decedent was exposed to any Warren product. (D.I. 133 at 6-7)

### 11. Anchor/Darling Valve Company

Mr. Poggenburg did not identify any asbestos-containing Anchor Darling products on board the *USS Edmonds* or observe whether the decedent was exposed to any Anchor Darling product. (D.I. 129 at 3-4)

### III. LEGAL STANDARD

#### a. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a

dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 322. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see*

*also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)–(3). A plaintiff's failure to respond "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Even where a party does not file a responsive submission to oppose the motion, the court must still find that the undisputed facts warrant judgment as a matter of law. *Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003) (citing Fed. R. Civ. P. 56; *Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)). In other words, the court must still determine whether the unopposed motion for summary judgment "has been properly made and supported." *Williams v. Murray, Inc.*, 2014 WL 3783878, at *2 (D.N.J. July 31, 2014) (quoting *Muskett v. Certegy Check Svcs., Inc.*, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010)).

### b. Maritime Law: Product Identification/Causation

The parties do not dispute that maritime law applies to all Naval and sea-based claims. (D.I. 108) In order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant, "that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor[12] in causing the injury he suffered." *Lindstrom v. A-C Prod.*

---

[12] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

*Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) *abrogated on other grounds by Air & Liquid Systems Corp. v. Devries*, 139 S. Ct. 986 (2019)[13] (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid Sys. Corp.*, 2017 WL 1199732, at *4 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or Decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[14] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark*, 21 F. App'x at 376). On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient [to establish causation]. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376) (internal citation omitted). "Rather, the plaintiff must show 'a high enough level of exposure that an inference

---

[13] In *Devries*, the Supreme Court rejected "the more defendant-friendly bare metal defense," which provided that "[i]f a manufacturer did not itself make, sell, or distribute the part or incorporate the part into the product, the manufacturer is not liable for harm caused by the integrated product . . . ." *Devries*, 139 S. Ct. at 994. The Supreme Court held that a product manufacturer has a duty to warn in the context of maritime tort law "when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger." *Id.* at 996.

[14] However, "'substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury.'" *Stark*, 21 F. App'x at 376 (emphasis in original) (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991)).

that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. App'x at 376 (citations omitted).

## IV. DISCUSSION

### a. Air & Liquid Systems Corporation

The court recommends granting Air & Liquid's motion for summary judgment, because there is no genuine issue of material fact in dispute that no Air & Liquid product was a substantial factor in causing Mr. Gustavson's injuries. Mr. Poggenburg did not identify a Buffalo pump aboard the *USS Edmonds*. (D.I. 131, Ex. A at 25:24-26:2, 34:23-35:7, 40:5-11) Furthermore, Mr. Poggenburg conceded that he never served on the *USS Shangri-La*, did not have any personal knowledge about any activities or equipment aboard the *USS Shangri-La*, and that his testimony regarding the activities or equipment aboard the *USS Shangri-La* was merely a guess. (*Id.* at 72:9-21) Mr. Poggenburg admitted that he did not supervise Mr. Gustavson's daily operations in the engine spaces and, therefore, could not recall him working on a fuel oil transfer pump. (*Id.* at 73:6-11) Moreover, Mr. Poggenburg conceded that he could not remember ever seeing Mr. Gustavson working on any pumps aboard the *USS Edmonds*. (*Id.* at 28:15-17) Because the plaintiff has not responded by introducing evidence of product identification and product nexus between Air & Liquid's products and Mr. Gustavson's alleged injuries, there is no basis for the court to find that an Air & Liquid product was a substantial factor in causing Mr. Gustavson's injuries, as required by maritime law. Therefore, the court recommends granting Air & Liquid's motion for summary judgment.

### b. Aurora Pump Company

The court recommends granting Aurora's motion for summary judgment, because there is no genuine issue of material fact in dispute that no Aurora product was a substantial factor in causing Mr. Gustavson's injuries. During Mr. Poggenburg's deposition, he did not identify any Aurora product. Because the plaintiff has not responded by introducing evidence of product identification and product nexus between Aurora's products and Mr. Gustavson's alleged injuries, there is no basis for the court to find that an Aurora product was a substantial factor in causing Mr. Gustavson's injuries, as required by maritime law. Therefore, the court recommends granting Aurora's motion for summary judgment.

### c. Blackmer Pump Company

The court recommends granting Blackmer's motion for summary judgment, because there is no genuine issue of material fact in dispute that no Blackmer product was a substantial factor in causing Mr. Gustavson's injuries. During Mr. Poggenburg's deposition, he did not identify any Blackmer product. Because plaintiff has not responded by introducing evidence of product identification and product nexus between Blackmer's products and Mr. Gustavson's alleged injuries, there is no basis for the court to find that a Blackmer product was a substantial factor in causing Mr. Gustavson's injuries, as required by maritime law. Therefore, the court recommends granting Blackmer's motion for summary judgment.

### d. BW/IP Inc.

The court recommends granting BW/IP's motion for summary judgment, because there is no genuine issue of material fact in dispute that no BW/IP product was a substantial factor in causing Mr. Gustavson's injuries. During Mr. Poggenburg's deposition, he did not identify any BW/IP product. Because plaintiff has not responded by introducing evidence of product

identification and product nexus between BW/IP's products and Mr. Gustavson's alleged injuries, there is no basis for the court to find that a BW/IP product was a substantial factor in causing Mr. Gustavson's injuries, as required by maritime law. Therefore, the court recommends granting BW/IP's motion for summary judgment.

### e. CBS Corporation

The court recommends granting CBS's motion for summary judgment, because there is no genuine issue of material fact in dispute that no CBS product was a substantial factor in causing Mr. Gustavson's injuries. During Mr. Poggenburg's deposition, he did not identify any CBS product. Because plaintiff has not responded by introducing evidence of product identification and product nexus between CBS's products and Mr. Gustavson's alleged injuries, there is no basis for the court to find that a CBS product was a substantial factor in causing Mr. Gustavson's injuries, as required by maritime law. Therefore, the court recommends granting CBS's motion for summary judgment.

### f. Eaton Corporation

The court recommends granting Eaton's motion for summary judgment without prejudice due to plaintiff's failure to timely oppose Eaton's pending motion as required by the scheduling order, Fed. R. Civ. P. 41(b), Fed. R. Civ. P. 56(c)(1), and Fed. R. Civ. P. 56(e)(2).

### g. Flowserve U.S., Inc.

The court recommends granting Flowserve's motion for summary judgment, because there is no genuine issue of material fact in dispute that no Flowserve product was a substantial factor in causing Mr. Gustavson's injuries. During Mr. Poggenburg's deposition, he did not identify any Flowserve product. Because plaintiff has not responded by introducing evidence of product identification and product nexus between Flowserve's products and Mr. Gustavson's

alleged injuries, there is no basis for the court to find that a Flowserve product was a substantial factor in causing Mr. Gustavson's injuries, as required by maritime law. Therefore, the court recommends granting Flowserve's motion for summary judgment.

### h. FMC Corporation

The court recommends granting FMC's motion for summary judgment, because there is no genuine issue of material fact in dispute that no Northern or Chicago pump was a substantial factor in causing Mr. Gustavson's injuries. Mr. Poggenburg testified that he would have no reason to dispute plaintiff's counsel's representation that there were Northern pumps onboard the *USS Edmonds*. (D.I. 117, Ex. C at 53:12-17) He also agreed that, because Mr. Gustavson was solely responsible for oil transfer, it would be fair to say that he worked on Northern pumps and that he was exposed to asbestos through this work. (*Id.* at 53:20-24, 54:3-20) However, Mr. Poggenburg testified that he had no personal recollection of seeing any Northern pump aboard the *USS Edmonds* during the time that Mr. Gustavson served. (*Id.* at 73:1-5) He also testified that he had no personal recollection of fuel oil pumps being replaced or flange gasket material being replaced on the *USS Edmonds*. (*Id.* at 77:1-13) Furthermore, Mr. Poggenburg could not recall Mr. Gustavson working on a fuel oil transfer pump. (*Id.* at 73:6-11) Mr. Poggenburg conceded that he could not describe any of the pumps that may have been attached to the oil tanks and could not recall ever seeing Mr. Gustavson working on any pump aboard the *USS Edmonds*. (*Id.* at 74:17-22, 28:15-17) Because plaintiff has not responded by introducing evidence of product identification and product nexus between FMC's products and Mr. Gustavson's alleged injuries, there is no basis for the court to find that a FMC product was a substantial factor in causing Mr. Gustavson's injuries, as required by maritime law. Therefore, the court recommends granting FMC's motion for summary judgment.

### i. Gardner Denver, Inc.

The court recommends granting Gardner Denver's motion for summary judgment, because there is no genuine issue of material fact in dispute that no Gardner Denver product was a substantial factor in causing Mr. Gustavson's injuries. During Mr. Poggenburg's deposition, he did not identify any Gardner Denver product. Because plaintiff has not responded by introducing evidence of product identification and product nexus between Gardner Denver's products and Mr. Gustavson's alleged injuries, there is no basis for the court to find that a Gardner Denver product was a substantial factor in causing Mr. Gustavson's injuries, as required by maritime law. Therefore, the court recommends granting Gardner Denver's motion for summary judgment.

### j. Warren Pumps, LLC

The court recommends granting Warren's motion for summary judgment, because there is no genuine issue of material fact in dispute that no Warren product was a substantial factor in causing Mr. Gustavson's injuries. Mr. Poggenburg testified that he would have no reason to dispute plaintiff's counsel's representation that there were Warren pumps onboard the *USS Shangri-La*. (D.I. 131, Ex. A at 63:2-5) He also agreed that because Mr. Gustavson worked in the fire room on the *USS Shangri-La*, he would have worked on Warren steam pumps. (*Id.* at 63:8-19) However, Mr. Poggenburg admitted that he never served on the *USS Shangri-La*, had no personal knowledge about the activities or equipment aboard that ship, and any testimony regarding the *USS Shangri-La* reflected his guesses as to those activities and equipment. (D.I. 133, Ex. A at 72:9-21) He also conceded that he could not recall ever seeing Mr. Gustavson working on any pump aboard the *USS Edmonds*. (D.I. 131, Ex. A at 28:15-17)

Furthermore, Mr. Poggenburg testified that he had no personal knowledge of the presence, type, location, orientation, function, material, color, model number, serial number, temperature rating, year of manufacture, or year of installation of any Warren pumps aboard the *USS Edmonds*. (D.I. 133, Ex. A at 83:5-85:12) He had no personal knowledge of whether Mr. Gustavson actually performed work on a Warren pump, or the frequency with which Mr. Gustavson worked, if ever, on a Warren pump aboard the *USS Edmonds*. (*Id.* at 85:13-24) Because plaintiff has not responded by introducing evidence of product identification and product nexus between Warren's products and Mr. Gustavson's alleged injuries, there is no basis for the court to find that a Warren product was a substantial factor in causing Mr. Gustavson's injuries, as required by maritime law. Therefore, the court recommends granting Warren's motion for summary judgment.

### k. Anchor/Darling Valve Company

The court recommends granting Anchor Darling's motion for summary judgment, because there is no genuine issue of material fact in dispute that no Anchor Darling product was a substantial factor in causing Mr. Gustavson's injuries. During Mr. Poggenburg's deposition, he did not identify any Anchor Darling product. Because plaintiff has not responded by introducing evidence of product identification and product nexus between Anchor Darling's products and Mr. Gustavson's alleged injuries, there is no basis for the court to find that an Anchor Darling product was a substantial factor in causing Mr. Gustavson's injuries, as required by maritime law. Therefore, the court recommends granting Anchor Darling's motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, and as addressed in the chart *infra*, the court recommends granting Eaton's motion for summary judgment without prejudice, and the remaining defendants' motions for summary judgment with prejudice.

| Defendant | Motion for Summary Judgment |
|---|---|
| Air & Liquid Systems Corporation | GRANT |
| Aurora Pump Company | GRANT |
| Blackmer Pump Company | GRANT |
| BW/IP Inc. | GRANT |
| CBS Corporation | GRANT |
| Eaton Corporation | GRANT WITHOUT PREJUDICE |
| Flowserve U.S., Inc. | GRANT |
| FMC Corporation | GRANT |
| Gardner Denver, Inc. | GRANT |
| Warren Pumps, LLC | GRANT |
| Anchor/Darling Valve Company | GRANT |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: May 14, 2019

Sherry R. Fallon
United States Magistrate Judge